## CLAYTON v. SPENCER.

DENVER TOWN SITE — *title under act of congress.* An actual occupant and owner of improvements upon a lot in the city of Denver, at the date of the entry of the town site under the act of congress of May 28, 1864, for the relief of the city of Denver (13 Stat. at Large, 94), is entitled thereto as against one who derives title from the Denver Town Company and not by possession or occupation.

Upon bill filed by a grantee of such occupant and owner of improvements to compel a conveyance and enjoin an action of ejectment, a deed having been made to the respondents by the probate judge without proceeding to settle the title pursuant to the statute (R. S. 621), the relief was granted.

POWER OF ATTORNEY — *by husband and wife.* Under a power from husband and wife which conferred authority to sell and convey all their real estate in the county of Arapahoe, it appearing that they owned no property jointly, and that the husband owned none in that county, the wife's separate estate may be conveyed.

PRACTICE — *how relief may be granted.* Where relief is sought upon the ground that respondents have obtained from the probate judge the legal title, which of right belongs to complainant, the decree of the court may provide for transferring the title to the latter by deed to be executed by respondents, and in default thereof by a master.

*Appeal from District Court, Arapahoe County.*

THE bill alleged that lot 12, in block 95, in the east division of Denver, was a portion of the lands entered by James Hall in trust for the use and benefit of the rightful occupants and *bona fide* owners of the improvements thereon, on the 6th day of May, 1865, pursuant to the act of congress of May 28, 1864, for the relief of the citizens of Denver; that in the year 1864, Mary J. McLaughlin received a deed for said lot from Henry J. Rogers, who claimed to have title thereto; and that, soon after she received said deed, the said Mary entered into occupancy and possession of said lot and remained therein until the 18th day of March, 1867; that, on the day last mentioned, the said Mary conveyed the said lot to Joseph E. Bates and Joseph B. Cofield, who afterward conveyed the same to Lucretia Holman, who conveyed to complainant. The bill also alleged, that com-

plainant filed with the said Hall, within the time required by law, her claim for the said lot. It was also alleged, that, through several mesne conveyances, George W. and William M. Clayton claimed to have title to said lot; that George W. Clayton also filed with said Hall a claim for said lot, and that Omer O. Kent, successor in office to the said Hall, on the 27th of February, 1866, without any adjudication of the rights of the parties, or any hearing with reference thereto, conveyed the said lot to the said George W. Clayton; that on the 21st of January, 1871, the said George W. Clayton commenced an action of ejectment in the probate court of Arapahoe county, to recover possession of said lot. The title of the respective parties, and the facts respecting the entry of the lands and the conveyance of the same by each of the probate judges to his successor in office, were set out at length. The bill prayed that the defendant George W. Clayton should be enjoined from prosecuting the said action of ejectment, and that the defendants should be required to convey their title to complainant. The material facts were denied in the answer, which was put in without oath, and the proofs were taken before a master. Upon his report it appeared that Mary J. McLaughlin purchased the lot from Rogers in the year 1864, at which time there was a barn upon the lot, and a house standing partly upon this lot, and partly upon the adjoining lot number 11; that both lots were inclosed by a fence, and that the said Mary made some further improvements prior to April 14, 1865; that she occupied the premises and rented the same until March, 1867, when the lot was conveyed by Chever, as attorney in fact of the said Mary, to Bates and Cofield, from whom complainant derived title through Lucretia Holman. The power of attorney to Chever was executed by Enos and Mary J. McLaughlin, and conferred authority in the words following :

"To enter into and take possession of all property, both real and personal, wheresoever situated, to us belonging in the county of Arapahoe and territory of Colorado, and to let and demise the same, and grant, bargain, sell and convey

any or all, or any portion of such real and personal property," etc. It was also in evidence that the said Enos and Mary J. McLaughlin owned no real estate jointly, and that the said Enos owned none in his own right in Arapahoe county, at and after the giving of the said power of attorney until the making of the said deed to Bates and Cofield. It was admitted upon the record that the Denver Town Company assigned the said lot to W. E. Sisty, from whom the defendants claimed title. There was no evidence to show that the defendants, or either of them, or that any person under whom they claimed, had at any time held possession of the lot.

The decree of the court required the defendants, George W. and William M. Clayton, to remise, release, and quit-claim unto the complainant all the estate, title and interest which they acquired by the deed from Omer O. Kent, probate judge, to them within 60 days from the date thereof, and if the said George W. and William M. Clayton should fail to make such deed, then the master in chancery should make the same. The said defendants were enjoined from prosecuting the said action of ejectment, and from claiming any interest in or to the lot. From this decree the defendant William M. Clayton appealed.

Messrs. SAYRE & WRIGHT, for appellant.

Mr. H. R. HUNT, for appellee.

BELFORD, J.   In the view I take of this case it is immaterial to inquire as to the character of Rogers' title.

The evidence shows that Mary McLaughlin, through whom the appellee claims title, was in the actual occupancy of this property prior to, and at the date of the entry, and that her possession continued until March, 1867. The record further shows that she made her filing within the 90 days, provided by law, and upon so doing, she was entitled to a conveyance. Clayton's title is derived through the Denver Town Company, and it does not appear that either Clayton

or his grantors were ever in the actual occupancy of these lots. There was no way of deriving title except as pointed out by the act of congress and the act of the legislature. And neither the act of congress nor that of the territorial legislature recognizes any claim in this company.

If the Denver Town Company had no right, it could impart none. Objection is made to the deed executed by Chever, as attorney in fact of Mary and Enos McLaughlin. This letter authorized Chever to convey all the property belonging to Mary and Enos, and it is insisted that, inasmuch as lots 11 and 12 were the separate property of Mary, the attorney could not convey them under this power. The proof shows that they owned no property in common, and Enos had none in his individual right. The only property owned by either was the lots in controversy, and they belonged to Mary. There was, then, no joint estate to which the letter of attorney could apply. Such being the case, it seems clear that the intention in making the letter was to authorize Chever to convey these lots. *Dodge* v. *Hopkins*, 14 Wis. 636; *Dolton* v. *Cain*, 14 Wall. 476. According to the rule laid down in *Silver* v. *Ladd*, 7 Wall. 228, the decree is not improper in form.

The decree of the court below is

*Affirmed.*