### NOHL et al. v. HOLLOWAY et al.

No. 25614.  Feb. 4, 1936.

Rehearing Denied March 30, 1937.

Willingham & Fariss, for plaintiffs in error

Roy H. Ball, Ralph J. May, and Virgil R. Ball, for defendants in error

RILEY, J.  This is an action commenced by Walter H. Nohl, to quiet title to the mineral rights under lots 26 and 27, in block 8, Central addition to Oklahoma City.

July 6, 1909, the Columbia Bank & Trust Company conveyed said lots by warranty deed to John R. Adams of St. Louis. Mo. Adams did not place the deed of record until February 6, 1931. He paid no taxes on the lots after 1910.

On January 28, 1921, Jesse R. Ball obtained a tax deed for the lots from the county treasurer, upon a tax sale certificate issued to the county in 1918, for nonpayment of the 1917 taxes and assigned to Ball.

Ball went into possession and thereafter conveyed the lots to Mrs. E. C. Adams; she conveyed back to Ball. December 11, 1924, Jesse R. Ball, joined by his wife, Viola Ball, conveyed to A. F. Holloway. He occupied the lots as a homestead until death, and this action was commenced against his heirs.

July 30, 1932, John R. Adams and wife, by what is termed a mineral deed, conveyed the mineral rights in said lots to plaintiff, Walter H. Nohl.

Plaintiff assailed the validity of the tax deed, alleging it to be void, for the reasons: (1) That it shows that Oklahoma county was a competitive bidder at the original tax sale; (2) that said property with other property shows to have been sold by the county treasurer for a lump sum, and was not separately sold; (3) that the proceedings leading up to the sale were void; and (4) that plaintiff or his grantor never received any notice of the application for a tax deed.

Defendants Holloway moved and obtained an order making Jesse R. Ball and Viola Ball parties defendant.

Defendants answered, alleging validity of the tax deed; that they and their grantors had been in continuous possession of said premises since and from the date of the tax deed; that the action was barred by the statute of limitations and by laches of plaintiff and his grantor; that plaintiff's deed from Adams was champertous and void for the reason that Adams had never been in possession of said premises, and had never received any rents or profits therefrom.

Thereupon John R. Adams applied for and obtained leave to intervene and defend the title for the use and benefit of plaintiff. In his petition in intervention he attacked the validity of the tax deed upon the same grounds that plaintiff did in his petition. He made no plea on his own behalf as to the surface rights.

There is no contention that either plaintiff Nohl or intervener Adams was ever in possession of said premises.

Trial was had on the sole question of title, resulting in a finding by the trial court that the tax deed was fair and regular and not void upon its face; that plaintiff's action was barred by the statute of limitations; that the mineral deed from Adams to Nohl was champertous, and that plaintiff's action was barred by reason of laches on the part of Adams and his grantee.

Decree was for defendants, and plaintiff and intervener appeal.

Plaintiff contends that the tax deed is void upon its face in that it shows that several noncontiguous tracts or parcels of land were sold for taxes for the single sum of $19.36; and that it fails to show affirmatively a separate sale and the amount of delinquent taxes against each parcel.

They also contend that champerty is not available as a defense against the plaintiff Nohl, for the reason that Adams, the grantor, of the alleged champertous deed, intervened for the benefit of his grantee; and that the doctrine of laches does not apply in this case.

If either of three defenses be good, the judgment must be affirmed. We consider first the question of laches.

Plaintiffs bring this action in equity to quiet title. The record discloses that Adams obtained his deed to the lots in question in 1909. He never went into possession. He did not record his deed until 22 years thereafter when the property was being developed for oil. During all that time he paid no taxes. The tax deed was issued in 1921, and Ball immediately went into possession, paid all taxes back to 1911. Shortly thereafter he conveyed the lots, and the purchaser placed valuable and lasting improvements thereon. Holloway had some $1,500 worth of improvements on the lots.

Plaintiff Nohl obtained his mineral deed in July, 1932, more than eleven years after the tax deed was placed of record, and commenced this action on April 27, 1933.

In July, 1932, an oil well was brought in in the block in which the lots were located, which produced some 6,000 barrels of oil per day. At the date of trial some $1,246 had accumulated as royalty, and credited to the lots, which together with subsequent accruals is being withheld awaiting the result of this lawsuit.

If the doctrine of laches is ever applicable as against one seeking in equity to set aside a tax deed said to be void upon its face, the record in this clearly justifies its application. The property was greatly increased in value for oil. Plaintiffs have slept on their rights for more than twelve years, and have sat silently by and seen lasting and valuable improvements placed upon the lots by those claiming under the tax deed when every fact now relied upon was known to the intervener. Not only that, but they waited until the advancing oil field with its unsightly derricks and slush pits, its offensive noises, odors, etc., had destroyed the value of the premises as a homestead and reduced its rental from 50 to 75 per cent., and they ask a court of equity to cancel and set aside the tax deed in so far as it affects the mineral rights, and permit plaintiff Nohl to take the benefits accruing from that which destroyed the value of the premises as residence property. It is evident that without the discovery of the great oil field and its extension so as to include the property involved, plaintiff would not have become interested in the property and intervener would never have asserted claim to the property, but would have treated defendant's title as good and would have permitted them to continue to carry the burden of taxes for the support of the government for the 22 years and for all time. Plaintiffs contend that there is no scope for the plea of laches against the legal owner by one whose sole claim or color of claim is a tax deed which is void on its face and whose possession falls short of the period required to obtain title by prescription.

This rule has been recognized in some cases. The rule that the doctrine of laches will not apply where the tax deed is void upon its face has for the most part been limited to cases where the claimant under the tax deed never went into possession or where, having gone into possession, he did nothing to enhance the value of the property, or has not in some other way been placed at a disadvantage by the inaction of the owner, so as to make it inequitable to grant relief against the tax deed. Such was the case in Harris v. Defenbaugh, 82 Kan. 765, 109 P. 681, cited by plaintiff. Marysville Inv. Co. v. Holle et al., 58 Kan. 773, 51 P. 281, holds that failure of the owner of town lots to pay taxes on them does not operate by way of estoppel to strengthen or validate a void tax deed.

It is there said that it is extremely doubtful whether under the Kansas statute a case could possibly arise where the holder of the patent title would be estopped by mere silence or nonaction to assert his title as against a purchaser under a tax deed. The occupying claimants law (such as we have) is said to be sufficient to protect holder of a void tax deed.

This is a case illustrating the ineffectiveness of the occupying claimant law.

Plaintiffs apparently do not seek in this action to disturb defendants in the possession of the surface rights, nor the enjoyment and use of the improvements placed on the lots. All they seek to do is to quiet title to the mineral rights, which would enable them to take the proceeds arising from the oil operations which were in effect the very cause of the great decrease in value of the improvements. That is, plaintiffs seek to take all that is valuable and leave defendants in possession of the surface rights and improvements. They might successfully defeat defendants' recovery under the occupying claimant's law by asserting that they were not dispossessing them. Thereby they could destroy the value without being required to pay anything.

The general rule applying laches in this class of cases is:

"Irrespective of the statute of limitations, or in cases where the statute would not apply, the owner of land sold for taxes will be denied relief against the sale where he has delayed, for a great and unreasonable length of time, to seek redress; more especially where the property has meanwhile been greatly enhanced in value by the labor or expenditures of the tax purchaser, or where it has passed into the hands of innocent purchasers from him in good faith."

There is no fixed or arbitrary rule as to the lapse of time or circumstances which will justify the application of the doctrine of laches. Each case as it arises must necessarily be determined by its own circumstances.

It has been said that the question is addressed to the sound discretion of the chancellor.

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another, so long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law, but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, * * * delay becomes inequitable and operates as estoppel

against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief." Chase v. Chase, 20 R. I. 202, 37 A. 804.

Pomeroy on Equity, vol. 5, par. 21, commenting on the above statement says:

"The true doctrine concerning laches has never been more concisely and accurately stated."

It is quoted with approval in Parks v. Classen Co., 156 Okla. 43, 9 P. (2d) 432.

The principle would apply as well whether the tax deed be void or voidable.

The finding of the trial court on the question of laches must be approved.

We deem it unnecessary to consider the question whether the tax deed was valid, voidable, or void on its face, or the question of champerty.

The decree and judgment is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.